STATE of Minnesota, By Steve KEEFE, Commissioner, Department of Labor and Industry, Respondent,

v.

DULUTH, WINNIPEG & PACIFIC RAILWAY COMPANY, Relator.

No. CX–86–2058.

Court of Appeals of Minnesota.

June 30, 1987.

Hubert H. Humphrey, III, Atty. Gen., Louis Hoffman, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Raymond L. Erickson, J. Kent Richards, Duluth, for relator.

Heard, considered and decided by SEDGWICK, P.J., and PARKER and NIERENGARTEN, JJ.

## OPINION

PARKER, Judge.

Relator seeks review of a determination that the Federal Railroad Administration (FRA) has not preempted state regulation of railroad employees working on track at highway crossings. We affirm.

## FACTS

On May 24, 1984, the State of Minnesota, by Steve Keefe, Commissioner of Labor and Industry, issued a citation to relator Duluth, Winnipeg & Pacific Railway Company ("railroad"), claiming violations of 8 MCAR § 1.7081(A)(1) (now Minn.R. 5205.-0320) and 29 C.F.R. § 1926.200(g)(1) and (2). The citation alleged that on May 15, 1984, the railroad permitted three workers and a supervisor to conduct a track inspection on a section of track crossing Old Highway 169 near Virginia, Minnesota, without posting advance approach warning signs on the highway or using high-visibility, protective equipment such as orange reflective vests. The crew had spent several minutes cleaning the track in order to comply with FRA track safety standards.

Old Highway 169 is a two-lane, paved road with a posted speed limit of 40 miles per hour. The Commissioner claims there are several taverns and bars on this road and that the area near the railroad crossing has been the scene of numerous alcohol-related accidents.

The railroad contested the citation, claiming that Congress has expressly preempted state regulation in the field of railroad

safety and the Commissioner of Labor and Industry lacked jurisdiction to issue the citation.

The Commissioner and railroad both moved for partial summary judgment on the issue of jurisdiction and an administrative law judge granted the railroad's motion, ordering the Commissioner's complaint dismissed for lack of jurisdiction. The Commissioner appealed to the State Occupational Safety and Health Review Board, which reversed the ALJ's decision and reinstated the citation, reasoning that the federal railroad regulations regarding track inspection regulate only track maintenance and do not provide for the safety of workers. The railroad appeals.

### ISSUE

Has the FRA preempted state regulation of the safety of track inspectors at railroad-highway crossings?

### ANALYSIS

When Congress has expressed a "clear and manifest intent" to preempt an area of regulation, state action in that area is prohibited. *Ray v. Atlantic Richfield Co.*, 435 U.S. 151, 157, 98 S.Ct. 988, 994, 55 L.Ed.2d 179 (1978); *Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977), *reh'g denied*, 431 U.S. 925, 97 S.Ct. 2201, 53 L.Ed.2d 240 (1977). We do not believe the FRA has clearly manifested an intent to regulate traffic inspection safety where inspectors are working at railroad crossings over public highways.

The Federal Railroad Safety Act of 1970 states, in part:

> The Congress declares that laws, rules, regulations, orders, and standards relating to railroad safety shall be nationally uniform to the extent practicable. A State may adopt or continue in force any law, rule, regulation, order, or standard relating to railroad safety until such time as the Secretary has adopted a rule, regulation, order, or standard covering the subject matter of such State requirement. * * *

45 U.S.C.A. § 434 (1970).

The regulations promulgated by the FRA include track safety standards governing roadbeds, track geometry, track structure, track appliances and track-related devices, and inspection. *See* 49 C.F.R. §§ 213.-1–.241 (1986). These standards are not comprehensive, and the section relating to inspection addresses the safety of persons traveling on the railroads, rather than the safety of the inspectors themselves. *See id.*, §§ 213.231–.241.

In *State by Malone v. Burlington Northern, Inc.*, 311 Minn. 89, 247 N.W.2d 54 (1976), the Commissioner of Labor and Industry received several complaints about working conditions at a Burlington Northern repair and maintenance facility. The complaints alleged excessive exhaust fumes and an inadequate overhead walkway. The court stated:

> Pursuant to its statutory authority, the Federal Railroad Administration (FRA) has promulgated various regulations dealing with railroad safety. These regulations are all addressed to hazards involving the movement of trains. While the FRA has broad authority to investigate accidents and has adopted a regulation requiring that a blue signal be placed near any train that is being repaired in order to avoid accidental movement of the train while employees are working on or under it, the FRA has not regulated general aspects of occupational safety and health. The mere fact that FRA regulations in some way affect the safety of railroad employees does not mean that they cover the same "subject matter" and therefore preempt state authority.

*Id.* 247 N.W.2d at 55.

The reasoning of *Malone* is controlling here. While the FRA has regulated certain aspects of track safety, those regulations do not address the safety of railroad inspectors working at railroad-highway crossings. The Federal Railroad Safety Act specifically provides that a state may enforce a regulation until the FRA has

adopted a regulation covering the same subject matter. 45 U.S.C.A. § 434.

Additional FRA regulations were proposed in March 1975; however, in 1978 the rulemaking proceedings were terminated and a policy statement was issued by the FRA entitled "Railroad Occupational Safety and Health Standards; Termination." 43 Fed.Reg. 10,583 (March 14, 1978). A summary at the beginning of the statement explains its purpose:

> The Federal Railroad Administration (FRA) is withdrawing its notice of proposed rulemaking with respect to railroad occupational safety and health standards. FRA had determined that it should not attempt to regulate at this time in an area already covered by regulations issued by the Department of Labor (Labor). This termination notice also explains the respective jurisdiction of FRA and Labor in a policy statement.

*Id.* at 10,584.

The Commissioner argues that this policy statement is not a properly adopted "law, rule, regulation, order or standard" which may be the basis for federal preemption of the Commissioner's authority. (*See* 45 U.S.C.A. § 434.) We do not address this argument, but conclude that even if the policy statement is viewed as sufficient authority to preempt certain aspects of state regulation, it has not preempted the regulation of railroad-highway crossing safety at issue here.

We base this conclusion on several considerations. The language of the policy statement indicates an attempt to delineate the respective jurisdictions of the FRA and OSHA, rather than to override OSHA's jurisdiction:

> [T]he FRA has determined that, at this time, it would not be in the best interests of the public and of railroad safety for this agency to become involved extensively in the promulgation and enforcement of a complex regulatory scheme covering in minute detail, as do the OSHA standards, working conditions which, although located within the railroad industry, are in fact similar to those of any industrial workplace. Rather, we

believe that the proper role for FRA in the area of occupational safety in the immediate future is one that will concentrate our limited resources in addressing hazardous working conditions in those traditional areas of railroad operations in which we have special competence.

> \*    \*    \*    \*    \*    \*

> The purposes of this statement of policy are to assure the integrity of the regulatory program currently in place for the promotion of rail transportation safety by articulating its dimensions and to clarify the respective roles of FRA and OSHA in assuring the occupational safety and health of railroad employee[s].

> \*    \*    \*    \*    \*    \*

> Both OSHA and FRA seek to assure workplaces are as safe as possible. To that end the Ninety-First Congress enacted both the OSH Act and the Federal Railroad Safety Act of 1970. Within the area of railroad operations, it is FRA which must decide what regulations are necessary and feasible.

> \*    \*    \*    \*    \*    \*

> FRA recognizes that OSHA currently is not precluded from exercising jurisdiction with respect to conditions not rooted in railroad operations nor so closely related to railroad operations as to require regulation by FRA in the interest of controlling predominant operational hazards.

*Id.* at 10,585–87.

The above language recognizes the limitations on the FRA's exercise of authority and the importance of working with OSHA, rather than attempting to rewrite OSHA's numerous regulations.

The policy statement provides that if, for some reason, further regulation is deemed necessary, the FRA in the future "will not hesitate to adopt its own standards to assure a safe environment for railroad operations and to promote regulatory consistency." *Id.* at 10,587. This language recognizes that the FRA at present does not regulate the entire area of railroad safety.

The policy statement provides that FRA regulation should focus on hazards resulting from train movement over the rails:

> FRA has decided to focus its resources and energies for the immediate future on the safety of railroad operations. As used herein, "railroad operations" refers to the movement of equipment over the rails. * * * For instance * * * proper precautions to assure that trackmen are not struck by trains or other equipment moving over the rails are part of the safety of railroad operations.

*Id.* at 10,585. Here, on the other hand, the contested state regulation would protect workers at railroad crossings from vehicular traffic on the highways that cross railroad tracks. The state regulations would also protect drivers on those highways who might not otherwise see the railroad workers in time to prevent an accident.

Read narrowly, the "subject matter" of the state regulation is not specifically addressed by the policy statement. The railroad argues that a section in the statement which discusses personal protective equipment covers the same "subject area" regulated by the state. *Id.* at 10,588. OSHA regulations, however, indicate that the term "personal protective equipment" refers to lifelines or safety nets, or to equipment designed to protect a worker's face, head, eyes and hearing. *See* 29 C.F.R. § 1926.100–.107 (1986). Warning garments or signs are not included under this designation. *Id.*

Even if warning garments or signs were to be considered personal protective equipment, mere reference to this subject in the policy statement does not evidence an intention to preempt regulation in that area. Instead, the language again indicates that OSHA regulations in this area should be applied "except to the extent the general requirements might be read to require protective equipment responsive to hazards growing out of railroad operations," i.e., the movement of equipment over the rails. 43 Fed.Reg. at 10,588. As noted above, the protection of railroad workers from train-related accidents and the protection of railroad workers and highway travelers from vehicular accidents at railroad-highway crossings are two different concerns. Finally, the policy statement indicates: "If necessary, FRA will not hesitate to issue regulations placing conditions on the use of protective equipment * * * or otherwise regulating its use." *Id.* By indicating an intent to harmonize FRA regulations with OSHA regulations unless otherwise necessary, the FRA demonstrates that the subject area of worker safety has not been preempted.

OSHA construction standards and color codes for physical hazards are also recognized by the policy statement; to the extent they do not impede the FRA's authority over the movement of equipment over the rails, those regulations are applicable. We find it unlikely that the use of warning signs and high-visibility garments would interfere with the FRA's authority relating to the movement of equipment over the rails; however, in the event the FRA should deem such regulation to be a usurpation of its authority, it has retained the power to issue preemptive regulations governing that subject area.

We therefore conclude that the FRA has not issued preemptive regulations governing the safety of workers at railroad-highway crossings; thus, the state may properly enforce the regulations at issue here. Because we affirm the decision of the State Occupational Safety and Health Review Board on this basis, we need not address the respondent Commissioner's additional arguments.

### DECISION

Affirmed.